UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Richmond Division

In re: Potomac Supply Corporation,   Case No. 12-30347-DOT
      Debtor   Chapter 7

Chesapeake Trust,
      Plaintiff,

v.   Adv. Pro. No. 13-03073-DOT

Chesapeake Bay Enterprise, Inc.
      Defendant.

## MEMORANDUM OPINION

### Introduction.

Debtor Potomac Supply Corporation filed a chapter 11 petition in this court on January 20, 2012. It was primarily represented by attorneys Patrick J. Potter and Jerry Lane Hall of the law firm Pillsbury Winthrop Shaw Pittman LLP (Pillsbury). The chapter 11 case was converted to chapter 7 on January 24, 2013.

The instant adversary proceeding arises from a complaint filed by Chesapeake Trust against Chesapeake Bay Enterprise, Inc. (CBE) and concerns an asset purchase agreement entered into by the debtor with CBE on September 21, 2012. In response to the complaint, defendant CBE filed a motion for the district court to withdraw the reference as to the adversary complaint and also filed a Third-Party Complaint (the "Third-Party Complaint") against Pillsbury, Potter, Hall, and Regions Bank. On August 14, 2013, CBE filed an Amended Third-Party Complaint.

1

In this opinion, the court rules upon the motion of third-party defendants Pillsbury and Potter to dismiss counts VII and VIII of CBE's Third-Party Complaint. (Counts VII and VIII of the Third-Party Complaint are identical to counts VI and VII of CBE's Amended Third-Party Complaint.) For reasons stated in this opinion, Pillsbury's and Potter's motion to dismiss these counts is granted with prejudice.

## Background.

Debtor, which was founded in 1948, operated as a sawmill and building supply company that over the years of its operations came to include pallet manufacturing, wood preservation, home specialty product manufacturing and woody biomass processing for alternative home heating energy. In 2009 debtor entered financing arrangements with Regions Bank, which included several multi-million dollar loans by Regions to debtor. On January 20, 2012, the total amount due on the loans was greater than 17 million dollars. On that date, because debtor's financial difficulties prevented it from continuing to service the Regions debt, debtor filed the chapter 11 bankruptcy petition in this case.[1] Debtor's assets consisted of its plant, equipment and machinery, inventory, accounts receivable, and real estate. Most of the assets were encumbered by the Regions loans.

Because debtor's business operations could not be sustained in the chapter 11, debtor's counsel filed motions to provide for an auction of substantially all of

---

[1] In its motion to convert the case to chapter 7, Regions claimed that the current outstanding balance due on the loan as of the petition date was approximately $17,655,722. On May 22, 2012, Regions filed a proof of claim in the case, stating that the amount due on the petition date was $17,695.880.57.

2

debtor's assets. Under the auction procedures put in place, the due date for bids was September 17, 2012. However, on the due date, debtor, its counsel Pillsbury, Regions, and the official committee of unsecured creditors believed that all bids that had been received were "woefully inadequate." On September 20 debtor's counsel filed an auction supplement stating that the auction process "was adjourned without date . . . ."

CHEASPEAKE BAY ENTERPRISE (CBE)

Plaintiff Chesapeake Trust pleads in its complaint in this adversary proceeding that CBE is a Virginia Corporation formed in February 2012 and that at least one of its purposes was to acquire the assets of the debtor Potomac. CBE's officers are Merthia Haynie, president, and Philip J. Haynie, vice-president. Townsend Jackson served as lead negotiator for CBE in negotiations to acquire debtor's assets in the bankruptcy case. Craig Jackson, a relative of Townsend Jackson, was also involved in these negotiations.

On April 5, 2012, CBE retained counsel to represent it in connection with a potential purchase of debtor's assets. Between April and September 2012, CBE and debtor negotiated an arm's length asset purchase agreement. During this period, CBE sought financing for the purchase. On September 21, 2012, CBE and debtor signed an asset purchase agreement that had been prepared by Pillsbury and CBE's counsel at the time. Pursuant to this agreement, on September 17 and 18, 2012, CBE wired a total of $500,000 to Pillsbury, which deposited the funds in its trust account.

For reasons that are the subject of the underlying adversary proceeding, the asset purchase agreement between debtor and CBE did not close, and on November 6, 2012, debtor's assets were sold to Potomac Supply LLC, an affiliate of American Industrial Products.

Pillsbury has retained CBE's purchase deposit of $500,000, and a major issue in the underlying adversary proceeding is whether CBE is entitled to the return of the deposit. The deposit was the subject of an order entered by the court in the chapter 11 case on November 13, 2012. (Docket 485) This order, entitled "Order On Agreed Motion To Settle Superpriority Administrative Claim of Regions Bank And Approve Distribution of Sale Proceeds", provided for distribution of funds received from the liquidation of assets in the case.

Paragraph 5 of the November 13 order also provided for distribution of the CBE deposit. It stated that all of debtor's interest in the CBE deposit would be assigned to Pillsbury, subject to the following: a) from the deposit Pillsbury was entitled to its reasonable fees and expenses incurred in prosecuting or defending litigation to recover the CBE deposit; b) after recovery of the deposit, Pillsbury was entitled to recover up to $240,000; c) any excess recovery from the deposit would be divided equally by Pillsbury, Regions, and unpaid administrative expenses; any remaining excess would be paid to unsecured claims.

On January 24, 2013, the court entered a consent order converting debtor's case to a chapter 7. The order converting the case stated that conversion would not affect the rights of the parties to the Settlement Order of November 13, 2012, and

4

specifically preserved those rights. Paragraph 8 of the conversion order further provided that:

> [t]o ensure that the provisions of the Settlement Order are honored, all right, title and interest in and to any cause of action, claim or defense relating to funds held and owned by Pillsbury (as provided in the Settlement Order) against Chesapeake Bay Enterprise, Inc. or any person claiming ownership of or an interest in such funds shall be placed in a trust over which Pillsbury shall be trustee and subject to the trust agreement attached at Exhibit A. To avoid any misunderstanding, all such causes of action, claims or defenses are not and shall not be deemed property of the estate (and shall be deemed contributed to the Trust upon entry of this Order and signing of the Trust Agreement by Pillsbury), but shall remain subject to the Court's jurisdiction pursuant to the Settlement Order and this Order.

The order specifies that these funds are not property of the estate. Exhibit A incorporated a liquidating trust agreement and declaration of trust dated January 24, 2013, entered into by debtor, Pillsbury, as trustee, and Regions Bank and the unsecured creditor's committee as beneficiaries. The trust agreement created a trust referred to as the Chesapeake Deposit Liquidating Trust (Chesapeake Trust).

ADVERSARY PROCEEDING 13-03073

The instant adversary proceeding was initiated on April 9, 2013, by complaint filed by Chesapeake Trust, plaintiff, against Chesapeake Bay Enterprise, Inc., defendant. The gravamen of the complaint is Chesapeake Trust's asserted entitlement to retain the CBE deposit of $500,000, plus $500,000 additional deposit that plaintiff asserts was to be paid by CBE pursuant to the asset purchase agreement. On April 23, 2013, CBE filed its answer to the complaint and also filed a motion to the district court for withdrawal of the reference. CBE's motion to

withdraw the reference remains pending in the district court.[2]

Also on April 23, CBE filed the eight count Third-Party Complaint against Pillsbury, Hall, Potter, and Regions. (Docket 7) The third-party defendants filed motions to dismiss all counts. After the court held hearings and heard argument on the dismissal motions, the court ordered dismissal of certain counts, allowing CBE leave to amend its third party complaint. On August 14, 2013, CBE filed its Amended Third-Party Complaint.

## Motion To Dismiss Counts VII and VIII.

Pillsbury and Potter are the named defendants in Counts VII (defamation *per se*) and VIII (insulting words) of the Third-Party Complaint. On June 12, 2013, these defendants filed a motion to dismiss both counts. (Docket 35). The court heard argument on the dismissal motion on July 9, 2013, and reserved ruling. Subsequently, the parties have filed briefs.

## Additional Findings of Fact.

Except where otherwise indicated, the court takes judicial notice of the additional facts below. See, e.g., Katyle v. Penn Nat'l Gaming, Inc., 637 F.3d 462, 466 (4th Cir. 2011) ("We may consider as well other sources that courts ordinarily examine when ruling on a Rule 12(b)(6) motion to dismiss . . . 'in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.'" (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007))); *see also Burke v. Clarke*, 2012 WL 5921168, at *3

---

[2] 3:13-cv-00344-JAG.

6

n.2 (E.D. Va. Nov. 26, 2012.

On August 17, 2012, the court approved debtor's proposed procedures to sell its operations to the highest and best bidder. The procedures required the debtor to consult with Regions and the creditors' committee on matters involving the efforts to sell its operations.

On September 26, 2012, the debtor moved for court approval of an agreement to sell its operations to CBE. On October 2, 2012, CBE's attorney at the time notified debtor's counsel that CBE's proposed lender had ceased working on the loan. Third-Party Complaint ¶ 47.[3] On November 13, 2012, the court approved debtor's sale of its operations to Potomac Supply LLC (an entity unaffiliated with the debtor) pursuant to § 363 of the Bankruptcy Code, 11 U.S.C. § 363.[4]

On November 27, 2012, CBE, through new counsel, attorney Larry Katz, filed a motion to reconsider the court's order approving the sale to Potomac Supply LLC. The bases for reconsideration cited in paragraphs 9 and 10 of the motion included the absence of financing contingencies and CBE's ability to immediately close on a $15 million purchase agreement.

On November 28, 2012, Potter sent an email to Katz, the full text of which reads as follows:

> Subject: PSC
>
> Larry
>
> I hope this finds you well.

---

[3] This allegation is taken as true for purposes of the motion to dismiss. See textual discussion following footnote 6 below.
[4] All subsequent references to the Bankruptcy Code are to 11 U.S.C. §§ 101 through 1532.

7

>We have received motions that you filed on behalf of your clients last night.
>
>The reconsideration motion was missing two exhibits - - (1) the $15 million APA, and (2) a statement showing proof of funds in a bank account titled in the name of Chesapeake [Bay].
>
>Just so that I can say I professionally analyzed the motion and assessed its likelihood of success, I would appreciate your sending me these exhibits.
>
>In the meantime, I can send you all of the fraudulent financing proposals we received from your client if you would like. Something tells me they didn't share those with you, or information on the other government-contracting fraud problems that folks in the group had with the Feds.
>
>Either way, please send the omitted exhibits so that I can do my job appropriately.
>
>Best.
>
>Patrick [Potter]

In its Third-Party Complaint, CBE alleges that the above email from Potter to Katz is defamatory. Third-Party Complaint ¶ 75. CBE further alleges that: (a) the contents of Potter's email were repeatedly published before and after November 28, 2012; and (b) "additional malicious statements about [CBE], PJ and Merthia" were made by Pillsbury to "others, including William T. Carden, Sr." Third-Party Complaint ¶ 76.[5]

---

[5] The Amended Third-Party Complaint differs slightly from the Third-Party Complaint as to the publication. It states that the allegedly defamatory email was forwarded to "disinterested third-parties, including counsel for Regions, counsel for the Committee…, Alex C. Fisch, Stacy Carden, Bill Carden, Jr., and Bill Carden, Sr." In addition, the allegation as to the date of publication was removed.

Position of the Parties.

**Pillsbury and Potter**

Pillsbury and Potter contend that the absolute judicial privilege applies to their alleged statements. They argue that the privilege has only two requirements: The allegedly defamatory statements must have been (i) made in connection with a judicial proceeding and (ii) they must be relevant to the judicial proceeding. *See, e.g.,* David M. Irvine, *Exploring the Reach of the Absolute Judicial Privilege in Defamation Cases*, 24 J. of Civil Litig. 549 (Winter 2012-13), at 549 (analyzing Virginia's application of the absolute privilege and stating: "The doctrine is grounded in the policy rationale of encouraging unrestricted speech in litigation." (footnote omitted); *see also Restatement (Second) of Torts* § 586 (1977) ("An attorney at law is absolutely privileged to publish defamatory matter concerning another in communications preliminary to a proposed judicial proceeding, or in the institution of, or during the course and as a part of, a judicial proceeding in which he participates as counsel, if it has some relation to the proceeding."); *Mansfield v. Bernabei*, 727 S.E.2d 69, 75 (Va. 2012) (adopting the Restatement approach, "as well as the additional requirement that the disclosure be made only to interested persons.") The court in *Mansfield* also noted that the Restatement approach is consistent with Virginia's policy of "encouraging compromise and settlement." *Id.* at 74.

Pillsbury and Potter also argue that the only statements identified with specificity in the Third-Party Complaint are those contained in Potter's November

28 email. On its face, Potter's email was made in connection with and related to judicial proceedings—i.e., the debtor's chapter 11 bankruptcy case, the debtor's efforts to sell its operations pursuant to § 363 of the Bankruptcy Code, and CBE's motion to set aside this court's order approving the sale to Potomac Supply, LLC. Therefore, they argue that the statements at issue were protected by an absolute privilege, and counts VII and VIII of the Third-Party Complaint must be dismissed.

**Chesapeake Bay Enterprise**

CBE asserts that the absolute privilege does not apply. Its opposition memorandum identified only two elements that must be proven to establish the privilege: the same two cited by Pillsbury and Potter. ("For absolute judicial privilege to attach, the communications at issue must be made in a judicial proceeding and must be 'material, relevant or pertinent' to the issues of the judicial proceeding.") Docket 58.

During oral argument on July 9, however, CBE's counsel added a further requirement—namely, that the alleged defamatory statement be published only to parties interested in the judicial proceeding. *See* July 9 Hr'g. Tr. 16:6–13 (relying on *Mansfield* and *Harrell v. Colonial Holdings, Inc.,* 923 F. Supp. 2d 813 (E.D. Va. Feb. 12, 2013), for the third element). According to CBE, Potter's email fails to satisfy any of the required elements.

First, CBE contends that the absolute privilege does not apply to written correspondence but rather is limited to statements made in pleadings, and

10

during hearings or depositions.

Second, isolating the fifth paragraph of Potter's email (addressing "false financing proposals" and fraud issues of "folks in the group"), CBE contends that those statements were "gratuitous" and "irrelevant" to any ongoing judicial proceedings.

Third, CBE contends that the privilege does not apply because Potter's email was sent to parties disinterested in the judicial proceeding, namely (a) the debtor and its investment banker, (b) Regions' counsel, and (c) committee counsel.

Separately, relying upon *Rodarte v. Wal-Mart Associates, Inc.,* 6:12-CV-00055, 2013 WL 1898999, at *7 (W.D. Va. May 6, 2013), CBE makes the procedural argument that the court lacks sufficient information to determine whether the requirements of the absolute privilege have been satisfied.

Finally, CBE asserts that paragraph 76 of the Third-Party Complaint sufficiently alleges instances of defamation other than Potter's November 28 email.

Discussion and Conclusions of Law.

**FACTUAL BASIS FOR GRANTING DISMISSAL**

Contrary to CBE's argument, the court finds that there are sufficient facts to support a ruling on a dismissal motion that the requirements of the absolute privilege are satisfied. Notably, CBE has failed to identify any further facts necessary to a ruling. The district court's decision in *Rodarte v. Wal-Mart* does not support CBE's argument for three reasons.

First, the defendant in *Wal-Mart* allegedly defamed an individual prior to the commencement of any judicial proceeding. Here, at the time of Potter's email, three judicial proceedings were ongoing: (i) the debtor's chapter 11 case, (ii) the § 363 sale proceedings, and (iii) CBE's motion to set aside the court's order approving the sale to Potomac Supply LLC.

Second, the court in *Wal-Mart* stated that if all facts necessary to determine the affirmative defense of absolute privilege are properly before the court on a motion to dismiss, then the court can determine the matter. *See Wal-Mart* at *7. As discussed below, all facts necessary to evaluate the parties' positions are before the court at this time.

Third, in *Wal-Mart* the court plainly lacked the facts necessary to determine whether Wal-Mart's allegedly defamatory comments were made with the good faith belief that litigation would be commenced. *See id.* at *6-7 ("The question is whether the proceeding is contemplated [by Wal-Mart] in good faith . . . . There is not enough information on the face of the Amended Complaint to decide whether Wal-Mart can meet its burden of proving the affirmative defense of absolute privilege."). Good faith is not a required element of the absolute privilege in cases involving post-judicial proceedings, and such a finding is therefore unnecessary because in this case judicial proceedings had already commenced when the disputed statements were made. *Wal-Mart* supports a finding that in ruling upon Potter and Pillsbury's motion to dismiss based on absolute privilege, the court may rely upon CBE's Third-Party Complaint and those facts of which the court takes

12

judicial notice.

**ABSOLUTE JUDICIAL PRIVILEGE**

Under Virginia law, the absolute judicial privilege applies to alleged defamatory statements (i) made in connection with a judicial proceeding, and (ii) relevant to the judicial proceeding. *See Donohoe Constr. Co. v. Mount Vernon Assocs.*, 369 S.E.2d 857, 860 (Va. 1988) (the absolute privilege is "broad and comprehensive, including within its scope all proceedings of a judicial nature, and includes any proceeding for the purpose of obtaining such remedy as the law allows" (citation omitted)). *See also, e.g.,* Irvine, *Exploring the Reach of the Absolute Judicial Privilege in Defamation Cases*, *supra* at 549 (article focusing solely on the absolute privilege in Virginia). This is consistent with the *Restatement (Second) of Torts* § 586.

Virginia case law has not prescribed a requirement that statements made in and relevant to an ongoing judicial proceeding also not be published to third parties. *Mansfield* and *Colonial Holdings*, cited by CBE for that proposition, are inapplicable because those decisions involved alleged defamatory statements made prior to commencement of a judicial proceeding. *See Colonial Holdings*, 923 F. Supp. 2d at 823 ("Additionally, *pre-litigation* settlement communications enjoy absolute privilege from defamation claims, as long as the communication is made only to 'interested persons.'" (citing *Mansfield*, 727 S.E.2d 69, 75 (a pre-litigation defamation case))) (emphasis added).

In any event, according to CBE at the July 9 hearing, Potter sent his

13

November 28 email to the debtor, its investment banker, Regions, and the committee. Those were all interested parties under Section 1109(b) of the Bankruptcy Code. Because the email was sent to interested parties, that element was satisfied even if required.

Potter's statement regarding "fraudulent financing proposals" in his email of November 28 satisfies the requirements of the absolute judicial privilege. First, as previously noted, the email was sent in connection with ongoing judicial proceedings. The fact that Potter's statements were made in an email rather than a deposition or pleading makes no difference. "Because its purpose is to encourage unrestricted speech in litigation, the Supreme Court of Virginia has 'extended the application of the absolute privilege well beyond the actual courtroom.'" *Wal-Mart*, 2013 WL 1898999, at *5 (quoting *Lindeman v. Lesnick*, 604 S.E.2d 55, 58 (Va. 2004)). In Virginia the absolute privilege has been applied specifically to written correspondence. *See, e.g., Mansfield*, 727 S.E.2d at 74-75. (absolute privilege applied to alleged defamation contained in letter and draft complaint); *West v. Marjorie's Gifts, Inc.*, 1975 U.S. App. LEXIS 12496, at *2 (4th Cir. 1975) (absolute privilege applied to alleged defamation published via letter).

Virginia is not unique in its application of the absolute privilege to all forms of communication during litigation. *See, e.g., Riccobene v. Scales*, 19 F. Supp. 2d 577, 582-84 (N.D.W. Va. 1998) (applying absolute privilege to allegedly defamatory letter from attorney sent as part of judicial proceedings for which she was retained as counsel); *Aequitron Med., Inc. v. Dyro*, 999 F. Supp. 294, 298

14

Case 13-03073-BFK   Doc 127   Filed 12/31/13   Entered 12/31/13 10:11:54   Desc Main
                           Document      Page 15 of 20

(E.D.N.Y. 1998) ("[T]he absolute privilege attaches not only at the hearing or trial phase, but to every step of the proceeding in question, even if it is preliminary and/or investigatory . . . .") (citation omitted); *Lowenbraun v. Canary (In re Lowenbraun)*, 453 F.3d 314, 323 (6th Cir. 2006) (holding under Kentucky law that absolute privilege applied to protect bankruptcy trustee's oral statements to newspaper reporter).

Second, the challenged statements in Potter's November 28 email related to the pending judicial proceedings on their face. As one commentator on Virginia's application of the absolute privilege explains:

> [T]he second element, the requirement that the statement be "relevant and pertinent" to the proceeding, is usually quite straightforward. This is because the courts favor a liberal application of the rule, such that "the matter to which the privilege does not extend must be so palpably wanting in relation to the subject matter of the controversy that no reasonable man can doubt its irrelevancy and impropriety."

Irvine, *Exploring the Reach, supra*, at 554 (*quoting Massey v. Jones*, 28 S.E.2d 623 (Va. 1944)); *see also Katz v. Odin, Feldman & Pittleman, P.C.,* 332 F. Supp. 2d 909, 919 n.11 (E.D. Va. 2004) ("The absolute privilege applies only to statements relevant to the proceedings, but the concept of relevancy is to be 'liberally construed.'").

Potter's email opens by specifically referencing CBE's reconsideration motion and requesting CBE's counsel to send copies of two exhibits missing from the motion. The request was plainly relevant to Potter's assessment of CBE's reconsideration motion and in the context of the chapter 11 case and the § 363

sale. Because CBE's reconsideration motion specifically stated that its financing was in place, it cannot be said that Potter's cautioning Katz about his experience with "fraudulent financing proposals" was irrelevant, improper, or palpably unrelated to the proceeding. *See Massey v. Jones*, 28 S.E.2d at 627.[6]

## FEDERAL PLEADING STANDARD

The balance of the alleged defamatory statements claimed by CBE are described in the Third-Party Complaint in full as follows:

> Both prior to and after November 28, 2012, Pillsbury repeated and republished its false and defamatory statements and made additional malicious statements about CBE, PJ and Merthia to others, including William T. Carden, Sr.

Third-Party Complaint ¶ 76.

That portion of the complaint fails to satisfy the applicable federal pleading standard. To survive a motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A pleading that offers only "labels and conclusions" or a "formulaic recitation of the elements of a cause of action" will not suffice as adequate. *Twombly*, 550 U.S. at 555; *accord Nemet Chevrolet, Ltd. v.*

---

[6] Pillsbury and Potter also argue that the statement is also non-actionable because it is, in fact, true and that truth is an absolute defense to claims of defamation and insulting words. *See, e.g., Rosenberg v. Mason*, 160 S.E. 190, 195 (Va. 1931) ("In Virginia both the truth and privilege are complete defenses in bar of any action for defamation, whether it be for common law slander or libel, or for insulting words[.]"); *Ebersole v. Kline-Perry*, No. 1:12cv26, 2013 WL 2286043, at *4 (E.D. Va. May 23, 2013); *Goddard v. Protective Life Corp.*, 82 F. Supp. 2d 545, 560 (E.D. Va. 2000). However, under the present record, the court is not prepared to and need not address whether the statements in Potter's email were true.

*Consumeraffairs.com, Inc.*, 591 F.3d 250, 260 (4th Cir. 2009). Therefore, on a motion to dismiss, the court should disregard legal conclusions and determine whether the Third-Party Complaint has alleged sufficient facts to constitute a "plausible claim" for relief. *See Iqbal,* 556 U.S. at 678–79; *see also Nemet*, 591 F.3d at 253 ("[W]e need not accept the legal conclusions drawn from the facts, and we need not accept as true unwarranted inferences, unreasonable conclusions or arguments.")

CBE fails to provide a single fact to support its allegation that the statements made in Potter's November 28 email were repeated and republished "prior to and after November 28, 2012." Regardless, the absolute judicial privilege would apply to the same extent it applies to the November 28, 2012, email.[7]

Further, CBE fails to identify any "additional malicious statements" about it, whether by quotation, subject matter or speaker. The Third-Party Complaint cannot state a plausible claim for defamation when it does not identify any defamatory statements. *See, e.g., Skillstorm, Inc. v. Elec. Data Sys., LLC*, 666 F.

---

[7] The court notes that the Third-Party Complaint pleads that the words of Pillsbury and Potter tend to violence and breach of the peace because "[p]laintiff was humiliated, disgusted, angered and provoked by Pillsbury's insulting words." The insulting words statute in Virginia is Va. Code Ann. § 8.01-45, which provides that "all words shall be actionable which from their usual construction and common acceptance are construed as insults and tend to violence and breach of the peace." Disregarding the issue of how a corporation can be disgusted and angered, the court notes that the insulting words statute is likely inapplicable under the facts pled. A Virginia court has recently stated that "for Virginia Code § 8.01–45 to be actionable the words must be conveyed face to face or in such manner as to incite an immediate breach of the peace. This result is supported by the reasoning that our insulting words statute is largely subsumed by defamation. *Allen & Rocks, Inc. v. Dowell*, 252 Va. 439, 443, 477 S.E.2d 741, 743 (1996) (noting the cause of action for insulting words has largely been assimilated into defamation claims)...." *Hotung v. Hotung*, 85 Va. Cir. 241 (Va. Cir. Ct. 2012). The court has already found that privilege is a defense to a defamation claim. The court further notes the Virginia Supreme Court's decision in *Rosenberg v. Mason*, 160 S.E. 190, 195 (Va. 1931) ("In Virginia both the truth and privilege are complete defenses in bar of any action for defamation, whether it be for common law slander or libel, or for insulting words[.]")

Supp. 2d 610, 620 (E.D. Va. 2009) (claim insufficiently pled where plaintiff did not identify a speaker, the substance of the statement, when it was made or why it was defamatory and alleged no facts that would make it plausible); *accord Wolf v. Fed. Nat'l Mortgage Ass'n*, 830 F. Supp. 2d 153, 168 (W.D. Va. 2011) (dismissing claim where plaintiff failed to plead sufficient facts to make out claim for defamation), *aff'd*, 512 F. App'x 336 (4th Cir. 2013); *Cruz v. Marchetto*, 2012 WL 4513484, at *4 (S.D.N.Y. Oct. 1, 2012); *Yost v. City of Charleston*, 2009 WL 4162274, at *4 (D.S.C. Nov. 24, 2009).

The Third-Party Complaint is equally devoid of statements by Potter or anyone else at Pillsbury concerning PJ or Merthia Haynie. Regardless, neither of those individuals is a party to this adversary proceeding, and CBE lacks standing to prosecute an alleged defamation claim for the Haynies. *See The Gazette, Inc, v. Harris*, 325 S.E. 2d 713, 738 (Va. 1985).

In sum, paragraph 76 of the Third-Party Complaint is inadequate to overcome Pillsbury and Potter's motion to dismiss counts VII and VIII of the Third-Party Complaint.

**CONCLUSION**

For the reasons stated, the court finds that the absolute judicial privilege applies to Potter's November 8, 2012, email to Katz and that CBE's Third-Party Complaint fails to adequately allege any other facts sufficient to sustain an action for defamation or insulting words. The court's ruling applies to Counts VII and VIII of the original Third-Party Complaint as well as to Counts VI and VII of

the Amended Third-Party Complaint. Because the Amended Third-Party Complaint was filed after CBE had notice of the basis for the motion to dismiss Counts VII and VIII, and because the Amended Third-Party Complaint does not raise new grounds or arguments on the issues presently before the court, the court finds that the analysis contained herein is equally applicable to Counts VI and VII of the Amended Complaint, and those counts will be dismissed with prejudice as well.

A separate order will be entered.

Signed: December 30, 2013                             /s/ Douglas O. Tice Jr.
                                                   Douglas O. Tice Jr.
                                                   United States Bankruptcy Judge


Copies to:

Jerry Lane Hall                                    Entered on docket:  Dec 31, 2013
Pillsbury Winthrop Shaw Pittman LLP
2300 N Street, N.W.
Washington, DC 20037

Steven S. Biss
Law Office of Steven S. Biss
300 West Main Street
Suite 102
Charlottesville, VA 22903

William A. Broscious
Kepley Broscious & Biggs, PLC
2211 Pump Road
Richmond, VA 23233

Jonathan W. Jordan
King & Spalding
1180 Peachtree Street
Atlanta, GA 30309

Jack McKay
Pillsbury Winthrop Shaw Pittman LLP
2300 N Street, N.W.
Washington, DC 20037

Office of the U.S. Trustee - Region 4 -R
701 E. Broad Street, Suite 4304
Richmond, VA 23219

Vernon E. Inge, Jr.
LeClair Ryan
Riverfront Plaza - East Tower
951 East Byrd Street, 8th Floor (23219)
Post Office Box 2499
Richmond, VA 23218-2499