# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF VIRGINIA
### Richmond Division

In re:                                    )
                                          )
POTOMAC SUPPLY CORPORATION,               )     Case No. 12-30347-BFK
                                          )     Chapter 7
                          Debtor.         )
_____   )
CHESAPEAKE TRUST,                         )
                                          )
                          Plaintiff,      )     Adversary Proceeding
v.                                        )     No. 13-03073-BFK
                                          )
CHESAPEAKE BAY ENTERPRISE, INC., )
                                          )
                          Defendant.      )

## MEMORANDUM OPINION

This adversary proceeding, now on remand from the District Court, is before the Court on two Motions: (a) the Defendant's Motion to Authorize Prejudgment Interest, Attorney's Fees, Costs and Expenses; and (b) the Defendant's Motion to Compel Return of the $500,000 Deposit. Dkt. Nos. 222 and 230. The Plaintiff opposes both Motions. Dkt. Nos. 227, 233 and 234. The Court heard the arguments of the parties on December 15, 2015.

For the reasons stated below, the Motion of Chesapeake Bay Enterprise, Inc. ("CBE") to Authorize Prejudgment Interest, Attorney's Fees, Costs and Expenses will be granted in part and denied in part. The Court will award pre-judgment interest from November 6, 2012, and costs. The Court will deny CBE's request for an award of attorney's fees. The Motion to Compel Return of the $500,000 Deposit will be denied as against the Chesapeake Trust, but it will be granted as against Pillsbury.

**Procedural History**

Familiarity with the underlying facts is presumed. *See Chesapeake Bay Enters.,*

*Inc. v. Chesapeake Trust*, Civ. A. No. 3:15CV35, 2015 WL 5786831, at *1 (E.D. Va.

Sept. 30, 2015) (reversing this Court's decision and awarding $500,000 deposit to CBE);

*Chesapeake Bay Enters., Inc. v. Pillsbury Winthrop Shaw Pittman, LLP*, Civ. A. No.

3:14CV00633-HEH, 2014 WL 6685494, at *1 (E.D. Va. Nov. 25, 2014), *aff'd* 606

Fed.Appx. 130 (4th Cir. 2015) (affirming Bankruptcy Court's dismissal of CBE's Third

Party Complaint); *Chesapeake Trust v. Chesapeake Bay Enters., Inc*., Civ. No.

3:13CV344, 2014 WL 202028, at *1 (E.D. Va. Jan. 17, 2014) (denying CBE's motion to

withdraw the reference); *Chesapeake Trust v. Chesapeake Bay Enter., Inc. (In re*

*Potomac Supply Corp.)*, Adv. Pro. No. 13-03073-DOT, 2013 WL 6865405, at *1 (Bankr.

E.D. Va. Dec. 31, 2013) (dismissing certain counts of CBE's Third Party Complaint).

The following procedural history will provide context for the current controversy.

    A.   *The Potomac Supply Bankruptcy Case.*

    1.     Potomac Supply Corporation ("Potomac Supply") filed a voluntary

petition under Chapter 11 in this Court on January 20, 2012. Case No. 12-30347-BFK.

Pillsbury Winthrop Shaw Pittman, LLP ("Pillsbury") represented the Debtor at all times.

    2.     During the course of the Potomac Supply bankruptcy case, Potomac

Supply sought to sell substantially all of its assets. As a part of this effort, Potomac

Supply entered into an Asset Purchase Agreement ("APA") with CBE. CBE posted a

$500,000 deposit ("the Deposit") with Pillsbury. Although the parties contemplated the

2

execution of an Escrow Agreement, they never entered into a formal escrow agreement and the funds remained in Pillsbury's trust account for the entirety of the adversary proceeding before this Court.

3.      Ultimately, the Potomac Supply assets were sold to a party other than CBE. CBE demanded the return of its deposit; Pillsbury refused.

4.      On November 13, 2012, the Bankruptcy Court entered an Order on Agreed Motion to Settle Superpriority Administrative Claim of Regions Bank and Approve Distribution of Sales Proceeds. *Id*., Dkt. No. 485. Although the Order dealt with the disposition of a number of different assets, for purposes of this adversary proceeding, Paragraph 5 dealt with the disposition of the CBE Deposit. Paragraph 5 provided as follows:

> 5. **Distribution of Proceeds of Chesapeake Deposit.** Pillsbury shall be assigned all right, title and interest of the Debtor to one or more deposits tendered to the Debtor by Chesapeake, totaling $500,000.00 (the "**Chesapeake Deposit**"), subject to the following:
>
> a. Pillsbury shall be entitled to any recovery to the extent of its reasonable fees and expenses incurred in prosecuting and/or defending litigation to recover and/or retain the Chesapeake Deposit (the "Pillsbury-Chesapeake Fees").
>
> b. After recovery of the Pillsbury-Chesapeake Fees, Pillsbury shall be entitled to any recovery on account of the Chesapeake Deposit up to $240,000.00.
>
> c. Any recovery on account of the Chesapeake Deposit in excess of the Pillsbury-Chesapeake Fees and $240,000.00 shall be paid as follows: (i) 33 and 1/3 percent to Pillsbury, (i) 33 and 1/3 percent to Regions, and (ii) 33 and 1/3 percent to the Unpaid Administrative Claims Pool (as subsequently defined) until all allowed administrative claims against the

3

Debtor and its estate are paid in full, and thereafter, to the Unsecured Claims Pool.

*Id.*, Dkt. No. 485, ¶ 5 (hereinafter, the "Settlement Order") (emphasis in original).

5.     On January 24, 2013, the Court converted the Potomac Supply case to

Chapter 7. The Consent Order on Motion to Convert provided in relevant part as follows:

> To ensure that the provisions of the Settlement Order are honored, all right, title and interest in and to any cause of action, claim or defense relating to funds held and owned by Pillsbury (as provided in the Settlement Order) against Chesapeake Bay Enterprise, Inc. or any person claiming ownership of or an interest in such funds shall be placed in a trust over which Pillsbury shall be trustee and subject to the trust agreement attached at Exhibit A. To avoid any misunderstanding, all such causes of action, claims or defenses are not and shall not be deemed property of the estate (and shall be deemed contributed to the Trust upon entry of this Order and signing of the Trust Agreement by Pillsbury), but shall remain subject to the Court's jurisdiction pursuant to the Settlement Order and this Order.

*Id.*, Dkt. No. 538, ¶ 8 (hereinafter, the "Conversion Order").

6.     The Liquidating Trust Agreement assigned to the Chesapeake Trust "any and all interests of the Debtor in any and all litigation rights, including without limitation, causes of action, claims or defenses relating to the Funds [i.e., the $500,000 Deposit] against Chesapeake Bay Enterprise, Inc. or any person claiming ownership of or an interest in the Funds (the '**Funds Rights**')." *Id.*, Ex. A (Liquidating Trust Agreement), p. 1 (emphasis in original).

7.     The Liquidating Trust Agreement essentially followed the terms of the Settlement Order, in terms of the parties' respective rights (other than CBE's rights) to the Deposit in the event that it was determined that CBE was not entitled to a return

4

thereof. CBE was not a party to the Liquidating Trust Agreement. The parties to the Trust

recognized that CBE had a disputed claim to the Deposit. The Liquidating Trust

Agreement made Pillsbury the Trustee and further provided that "[a]ll decisions

regarding the Funds Rights (including but not limited to the pursuit and continuation or

settlement of any litigation) shall be made solely by Pillsbury, as Trustee." *Id*., Dkt. No.

538, ¶ 7.

> B. *This Adversary Proceeding and the Dismissal of CBE's Third Party*
> *Complaint Against Pillsbury.*

8.      The Chesapeake Trust filed this adversary proceeding against CBE on

April 9, 2013. Dkt. No. 1.

9.      CBE filed an Answer and a Third Party Complaint against Pillsbury and

two of its attorneys, Mr. Potter and Mr. Hall. Dkt. Nos. 6, 7. CBE amended its Third

Party Complaint on August 14, 2013. Dkt. No. 87.

10.     On December 31, 2013, the Court dismissed certain of the Counts against

Pillsbury and its attorneys. Dkt. Nos. 127, 128.

11.     On April 24, 2014, the Court dismissed the remaining Counts against

Pillsbury. Dkt. No. 166, 168. In its Memorandum Opinion, the Court noted: "there just

isn't any evidence in this case that the Deposit has been lost. It hasn't been wired

anywhere. Pillsbury is still holding on to it [.]" Dkt. No. 166, p. 22.

12.     CBE appealed the Court's dismissal of its claims against Pillsbury to the

District Court. The District Court affirmed this Court's decision to dismiss all counts

against Pillsbury. *Chesapeake Bay Enters., Inc. v. Pillsbury Winthrop Shaw Pittman*,

*LLP*, Civ. A. No. 3:14CV00633-HEH, 2014 WL 6685494, at *1 (E.D. Va. Nov. 25,

2014), *aff'd* 606 Fed.Appx. 130 (4th Cir. 2015). In affirming this Court's decision, the

District Court held:

> Here, CBE and the Chesapeake Trust have competing claims to the
> $500,000 held in escrow by Pillsbury. As the Bankruptcy Court noted,
> entitlement to the deposit is highly contested with both claimants
> contending the other was the first to commit a material breach of the APA.
> Any right of possession CBE may have must abide resolution of this issue.
> Consequently, as the Bankruptcy Court concluded, Pillsbury acted
> providently in holding the funds in its trust account until otherwise
> directed by the court. Such action is consistent with Pillsbury's obligation
> under Rule 1.15(b)(5) of the Virginia Rules of Professional Conduct. After
> having concluded that CBE was unable to show an immediate right of
> possession, the Bankruptcy Court properly granted Pillsbury's Motion for
> Summary Judgment on Count Two (conversion).
>
> CBE's claim of breach of fiduciary duty flows from equally tenuous logic.
> Positing the existence of a fiduciary duty to CBE, there is no plausible
> evidence in the record of any arguable breach. As discussed above,
> Pillsbury continues to hold the deposit in its trust account awaiting
> direction from the Bankruptcy Court. In the interim, Pillsbury has no legal
> obligation to bypass the Bankruptcy Court and disburse the funds as it sees
> appropriate. Moreover, CBE advances no legal authority to support such
> contention. This Court finds no error in the Bankruptcy Court's dismissal
> of the breach of fiduciary duty claim (Count Four).

*Id*., at *4.

13.    CBE appealed the District Court's decision to the Fourth Circuit, which

affirmed the District Court's decision. *Chesapeake Bay Enter., Inc. v. Pillsbury Winthrop*

*Shaw Pittman, LLP*, 606 Fed.Appx. 130 (4th Cir. 2015).

6

*C.  The District Court's Reversal of the Bankruptcy Court's Decision.*

14.    The Court held a trial in this adversary proceeding on the parties'

respective rights to the Deposit on September 11, 2014. The Court held on November 14,

2014, that Chesapeake Trust was entitled to the Deposit. Dkt. Nos. 202, 203.

15.    CBE filed its Notice of Appeal with this Court on November 24, 2014.

Dkt. No. 206.

16.    The District Court reversed this Court's decision, holding that CBE was

entitled to the Deposit. *Chesapeake Bay Enters., Inc. v. Chesapeake Trust*, Civ. A. No.

3:15CV35, 2015 WL 5786831, at *1 (E.D. Va. Sept. 30, 2015).

17.    Chesapeake Trust noted an appeal to the Fourth Circuit on October 29,

2015. Case No. 15-2335. The appeal remains pending.

*D.  Pillsbury Discloses that the Deposit is "Gone."*

18.    On October 29, 2015, CBE filed its Motion to Authorize (Award)

Prejudgment Interest, Attorney's Fees, Costs and Expenses. Dkt. No. 222. Chesapeake

Trust filed an Opposition. Dkt. No. 227.

19.    The Court heard argument on the Motion on November 24, 2015. At the

hearing, CBE's counsel requested that the Court enter an Order requiring the Chesapeake

Trust to immediately turn over the Deposit. The Court found that this request was not

fairly raised by CBE's Motion, and ordered that CBE file a separate Motion for return of

the Deposit.

20.     During this hearing, in response to CBE's request for an immediate return
of the deposit, Mr. Potter, counsel for Chesapeake Trust and Pillsbury, dropped a
bombshell: the Deposit was gone. Nov. 24, 2015 Hr'g Tr. at p. 48, Dkt. No. 232 ("It's not
sitting in the Pillsbury trust account, Your Honor. It's been spent. Your Honor issued a
judgment which was never stayed. The Trust spent it, in accordance with the waterfall
order [i.e., the Settlement Order] of Judge Tice. The money's gone, Your Honor.")

21.     On November 27, 2015, CBE filed a Motion to Compel Return of the
$500,000 Deposit. Dkt. No. 230. Chesapeake Trust and Pillsbury filed an Opposition.
Dkt. No. 233. The Court heard argument on this Motion on December 15, 2015.

22.     Counsel for Pillsbury's Affidavit, filed with its Opposition, states: "By
either the end of November 2014 or early December 2014, Chesapeake Trust distributed
$500,000 to Pillsbury in accordance with the Liquidating Trust Agreement." Dkt. No.
234, ¶ 9. The Affidavit further states that by December 31, 2014, "Pillsbury no longer
held the funds." *Id.*, ¶ 10.

*E.    The Potomac Supply Bankruptcy Case is Closed.*

23.     On December 29, 2014, the Chapter 7 Trustee filed his Final Report in the
Potomac Supply bankruptcy case. Case No. 12-30347-BFK, Dkt. No. 888.

24.     On January 22, 2015, the Court entered an Order approving without
objection the Chapter 7 Trustee's Final Report and Accounting. *Id.*, Dkt. No. 891.

25.     The Trustee filed his Final Account and Certification on October 7, 2015,
and the bankruptcy case was closed on December 14, 2015. Dkt. Nos. 909, 911.

**Conclusions of Law**

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the

Order of Reference of the U.S. District Court for this District entered August 15, 1984.

This is a non-core proceeding under 28 U.S.C. § 157(c)(1), but one for which the

Defendant, Chesapeake Bay Enterprise, Inc. ("CBE"), has consented to the entry of final

orders by the bankruptcy court. *Chesapeake Trust v. Chesapeake Bay Enters., Inc.,* Civ.

No. 3:13CV344, 2014 WL 202028, at *3–5 (E.D. Va. Jan. 17, 2014) (denying CBE's

motion to withdraw the reference, finding that this action is non-core, and further finding

that CBE has consented to the entry of final orders by the bankruptcy court).

**I.      Can the Court Proceed, in the Face of Pillsbury's
         Appeal to the Fourth Circuit?**

At the outset, the Court must address the question of whether it can proceed to

decide these Motions, in light of Pillsbury's pending appeal to the Fourth Circuit. In

*Fobian v. Storage Tech. Corp.*, the Fourth Circuit noted the "well-established principle

that an appeal divests a trial court of jurisdiction over 'those aspects of the case involved

in the appeal.'" 164 F.3d 887, 890 (4th Cir. 1999) (citing *Griggs v. Provident Consumer

Discount Co.*, 459 U.S. 56, 58 (1982)). The Court went on to hold that this principle is

not without exceptions. Specifically, the Court held that the District Court retains

jurisdiction over matters "in aid of the appeal." *Id.* The Court held that, when a District

Court is faced with a Rule 60(b) motion to set aside a judgment while the judgment is on

appeal, the District Court should either deny the motion promptly if it lacks merit, or it

should enter an order signaling its intent to grant the motion, whereupon the Court of

Appeals can remand the case to the District Court for further proceedings. *Id*., at 890-91.[1]

In *Crutchfield v. U.S. Army Corps of Engineers*, the District Court held: "the rule

of *Fobian* is not nearly as sweeping as the County suggests. Instead, the rule only applies

to prevent a trial court from taking actions that might duplicate or confuse issues before

the appellate court." 230 F.Supp.2d 673, 680 (E.D. Va. 2002). In *Crutchfield*, the District

Court held that it had jurisdiction to entertain the Plaintiffs' request for injunctive relief,

notwithstanding the pendency of an appeal on the underlying merits of the case. *Id.*

Similarly, in *MicroStrategy, Inc. v. Business Objects, S.A.*, the District Court held that it

had jurisdiction to entertain a motion to dissolve an injunction, despite a pending appeal,

"because the question of the injunctive relief ordered by the court [was] not on appeal

before the Federal Circuit." 369 F.Supp.2d 725, 730 (E.D. Va. 2005).

In this case, the Court finds that deciding CBE's Motion for an award of pre-

judgment interest and for an award of attorney's fees and costs will not interfere with

Chesapeake Trust's appeal to the Fourth Circuit in any way. The Court will decide these

matters, below.

With respect to CBE's request that the Court order an immediate return of the

Deposit – either from Chesapeake Trust or Pillsbury – this could possibly interfere with

the appeal because an order requiring the turnover of the Deposit to CBE could render

---

[1] This ruling is now set out in Federal Rule of Civil Procedure 62.1 and Bankruptcy Rule 8008 (Indicative Rulings).

Chesapeake Trust's appeal equitably moot. The Court, however, can fashion effective

relief that avoids any interference with the pending appeal. *See* Conclusion, below.

The Court, therefore, will address the two Motions on their merits.

## II.    CBE's Entitlement to an Award of Pre-Judgment Interest.

The issue of whether or not to award pre-judgment interest is governed by

Virginia law. *Hitachi Credit Am. Corp. v. Signet Bank*, 166 F.3d 614, 633 (4th

Cir.1999).[2] Virginia Code § 8.01–382 provides that the court "may provide for interest on

any principal sum awarded, or any part thereof, and fix the period at which the interest

shall commence." Va. Code Ann § 8.01-382. Whether prejudgment interest should be

awarded under § 8.01–382 is a matter within the sound discretion of the district court.

*Hitachi,* 166 F.3d, at 633. The statutory rate in Virginia is six percent. Va. Code Ann. §

6.2–302(A).

The purpose of awarding pre-judgment interest is to compensate the prevailing

party for the loss of use of its funds. *City of Milwaukee v. Cement Div., Nat. Gypsum Co.,*

515 U.S. 189, 196 (1995); *Breton, LLC v. Graphic Arts Mutual Ins. Co.*, No. 1:09CV60

(AJT/TRJ), 2010 WL 678128, at *1,*4 (E.D. Va. Feb. 24, 2010). Further, as the Supreme

Court has noted, "the existence of a legitimate difference of opinion on the issue of

liability is merely a characteristic of most ordinary lawsuits. It is not an extraordinary

---

[2] The *Hitachi* case was a diversity case. This case is founded on the Court's "related-to" jurisdiction under
28 U.S.C. § 1334. The principle is the same, however, because in both cases, State law provides the
substantive basis for a decision. *Barber v. Bettendorf Bank, N.A. (In re Pearson Indus., Inc.)*, 152 B.R. 546,
560 (Bankr. C.D. Ill. 1993) ("Where the trustee's claim asserted in the context of an adversary proceeding is
based on state law, state law will control the award of prejudgment interest.")

circumstance that can justify denying prejudgment interest." *City of Milwaukee*, 515 U.S., at 198.

Here, CBE seeks an award of pre-judgment interest from November 6, 2012, this being the Outside Date for a closing under the APA. Motion, Dkt. No. 222, p. 7. The Court finds that it is appropriate to award CBE pre-judgment interest at the rate of 6% per annum from November 6, 2012. The Deposit was a liquidated sum, not an unliquidated tort claim, and CBE's entitlement to a return of the Deposit arose as of the closing date. The Court sees no reason to depart from the ordinary rule in favor of an award of pre-judgment interest in this case. This amount will be included in the money judgment to be awarded against Chesapeake Trust.

### III. CBE's Entitlement to an Award of Attorney's Fees and Costs.

#### A. Attorney's Fees.

In its Findings of Fact and Conclusions of Law, this Court held with respect to an award of attorney's fees:

> CBE requests an award of attorney's fees and costs pursuant to Section 11.1 of the APA. CBE is not the prevailing party in this litigation. The Trust, while it is the prevailing party, is not the assignee of the APA. It is only the assignee of the rights to the Deposit. *See In re Potomac Supply Corp.,* No. 12-303470-BFK, Dkt. No. 538, Consent Order On Motion to Convert, Ex. A (Liquidating Trust Agreement for the Chesapeake Deposit Liquidating Trust) at ¶ C (providing the Trust property shall consist of "any and all interests of the Debtor in any and all litigation rights, including without limitation, causes of action, claims or defenses relating to the Funds against Chesapeake Bay Enterprise, Inc. or any person claiming ownership of or an interest in the Funds (the **'Funds Rights'**) shall be transferred to the Liquidating Trust"). The Trust is the prevailing party in this litigation but because it is not the assignee of the APA, it has

12

no right to recover its legal fees. Both parties' requests for an award of legal fees will be denied.

Dkt. No. 202, p. 21.

Of course, the tables have now turned, and CBE is indisputably the prevailing party. The principle, however, remains the same: the Liquidating Trust is not the assignee of the APA; it was only the assignee of the Funds Rights under the Settlement Order and the Conversion Order. The Supreme Court recently has reiterated the importance of the American Rule with respect to attorney's fees, when it stated:

> "Our basic point of reference when considering the award of attorney's fees is the bedrock principle known as the American Rule: Each litigant pays his own attorney's fees, win or lose, unless a statute or contract provides otherwise." *Hardt v. Reliance Standard Life Ins. Co.,* 560 U.S. 242, 252–253, 130 S.Ct. 2149, 176 L.Ed.2d 998 (2010) (internal quotation marks omitted). The American Rule has roots in our common law reaching back to at least the 18th century, see *Arcambel v. Wiseman,* 3 Dall. 306, 1 L.Ed. 613 (1796), and "[s]tatutes which invade the common law are to be read with a presumption favoring the retention of long-established and familiar [legal] principles," *Fogerty v. Fantasy, Inc.,* 510 U.S. 517, 534, 114 S.Ct. 1023, 127 L.Ed.2d 455 (1994) (internal quotation marks and ellipsis omitted). We consequently will not deviate from the American Rule " 'absent explicit statutory authority.' " *Buckhannon Board & Care Home, Inc. v. West Virginia Dept. of Health and Human Resources,* 532 U.S. 598, 602, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001) (quoting *Key Tronic Corp. v. United States*, 511 U.S. 809, 814, 114 S.Ct. 1960, 128 L.Ed.2d 797 (1994)).

*Baker Botts L.L.P v. ASARCO, LLC*, 135 S.Ct. 2158, 2164 (2015). *See also Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 260 (1975) ("Nor has [Congress] extended any roving authority to the Judiciary to allow counsel fees as costs or otherwise whenever the courts might deem them warranted.")

Although the outcome of this case depended upon the interpretation of the APA, Chesapeake Trust was not an assignee of the APA and did not accept all of the contractual benefits and obligations of the APA. Chesapeake Trust, for example, would not have had standing to sue CBE for contact expectancy damages for a breach of the APA. Any such claim remained with the bankruptcy estate. CBE, on the other hand, could not have sued Chesapeake Trust for specific performance to compel a conveyance of the Potomac Supply assets, had CBE elected to move forward with the APA – Potomac Supply owned the assets, not the Chesapeake Trust.

CBE is not entitled to an award of attorney's fees for the same reason that Chesapeake Trust was not entitled to an award of attorney's fees: there is no contract between these parties that provides for an award of attorney's fees.

### B.  Costs.

Federal Rule of Civil Procedure 54(d)(1) states that "[u]nless a federal statute, these rules or a court order provides otherwise, costs – other than attorney's fees – *should* be allowed to the prevailing party." Fed. R. Civ. P. 54(d)(1) (emphasis added). By contrast, Bankruptcy Rule 7054(b) states: "The court *may* allow costs to the prevailing party except when a statute of the United States or these rules otherwise provides." Fed. R. Bankr. P. 7054(b) (emphasis added). Thus, Bankruptcy Rule 7054(b) provides more discretion to the Court in deciding whether or not to award costs.

This notwithstanding, an award of costs is appropriate in this case. CBE claims a total of $3,716.99 in costs. Motion, Dkt. No. 222, p. 17. Chesapeake Trust does not

14

contest the reasonableness of CBE's costs. Accordingly, the Court will award $3,716.99

in costs in favor of CBE.

### IV.  CBE's Entitlement to an Order Compelling a Turnover of the Deposit.

#### A.  Equitable Restitution Against The Chesapeake Trust.

A money judgment in favor of CBE and against the Chesapeake Trust consistent

with the District Court's Opinion is certainly in order at this point in the litigation. CBE

further requests, however, that the Court enter an Order compelling Chesapeake Trust to

return the Deposit as a matter of restitution.[3]

CBE's position is not without foundation in the law. The Restatement (First) of

Restitution § 74 states as follows:

> A person who has conferred a benefit upon another in compliance with a
> judgment, or whose property has been taken thereunder, is entitled to
> restitution if the judgment is reversed or set aside, unless restitution would
> be inequitable or the parties contract that payment is to be final; if the
> judgment is modified, there is a right to restitution of the excess.

Restatement (First) of Restitution § 74 (1937).

---

[3] One commentator maintains that the subject of restitution has suffered from academic neglect, and that law professors, judges and attorneys would do well to return to the subject. *See* Douglas Laycock, *Restoring Restitution to the Canon*, 110 Mich. L. Rev. 929, 930 (2012) (" . . . hardly anyone who graduated from law school in the last forty years has taken a restitution course, and at least by 1989 (probably a good bit earlier), there was no restitution casebook in print. When a lawyer or judge encounters a restitution problem today, there is a substantial risk that she will view it as an isolated problem, only dimly aware that there is a large body of law on restitution and unjust enrichment and that arguments about her particular problem can be tested and refined in light of larger principles.") (footnote omitted).

The Restatement (Third) of Restitution similarly provides:

> A transfer or taking of property, in compliance with or otherwise in consequence of a judgment that is subsequently reversed or avoided, gives the disadvantaged party a claim in restitution as necessary to avoid unjust enrichment.

Restatement (Third) of Restitution and Unjust Enrichment § 18 (2011).

This principle of restitution after reversal of a judgment on appeal has been applied by the Supreme Court in *Arkadelphia Milling Co. v. St. Louis Southwestern Ry. Co*., 249 U.S. 134 (1919), and again in *Baltimore & O. R. Co. v. U.S.,* 279 U.S. 781 (1929). The Court held in the *Baltimore & Ohio* case:

> The right to recover what one has lost by the enforcement of a judgment subsequently reversed is well established. And, while the subject of the controversy and the parties are before the court, it has jurisdiction to enforce restitution and so far as possible to correct what has been wrongfully done.

279 U.S. at 786. The Virginia Supreme Court preceded the foregoing Supreme Court cases by roughly seventy years in holding that "[a] judgment or decree when reversed is a mere nullity, and the party aggrieved has a right to be restored to what he has lost by reason of [the] erroneous decision." *Flemings v. Riddick's Ex'r*, 46 Va. 272, 280 (1848).

The Fourth Circuit has applied this principle of restitution on at least one occasion. *Maryland Dept. of Human Res. v. U.S. Dept. of Agric.*, 976 F.2d 1462, 1482 (4th Cir. 1992) ("Equity recognizes the restitutionary 'principle, long established and of general application, that a party against whom an erroneous judgment or decree has been carried into effect is entitled, in the event of a reversal, to be restored by his adversary to that which he has lost thereby'"), quoting *Arkadelphia*, 249 U.S. at 145. Further, the

16

District Court for this District applied the same principle in the case of *Gerald M. Moore and Son, Inc. v. Drewry and Assoc's, Inc.*, 945 F.Supp. 117 (E.D. Va. 1996).

Still, equity will not order the performance of a useless act. *New York Times Co. v. U.S.,* 403 U.S. 713, 744 (1971) ("It is a traditional axiom of equity that a court of equity will not do a useless thing . . . ). It would be pointless to order the Chesapeake Trust to restore the funds to CBE. There is no dispute that Pillsbury moved the Deposit from its trust account to its operating account at "the end of November 2014 or early December 2014," Potter Aff., Dkt. No. 234, ¶ 9, and that thereafter, Pillsbury spent the money. *Id*., ¶ 10.

It would be futile to order the Chesapeake Trust to return the funds at this point. The Trust was established for a single purpose, to hold the Deposit and to distribute it in accordance with the terms of the Trust (after a determination of CBE's and the Trust's respective rights to the Deposit). The Trust has no ongoing business or assets. The Court will enter a money judgment against the Chesapeake Trust - the legal remedy of a money judgment, unlike the equitable remedy of restitution, never depends on the ability to pay. At the same time, the Court will deny CBE's request for an Order compelling the Trust to turn over the Deposit.

### B. *Equitable Restitution vs. Pillsbury.*

The more difficult question is whether the Court should order equitable restitution as against Pillsbury. Pillsbury has spent the Deposit, but there is no suggestion that if the Court were to order equitable restitution Pillsbury would be unable to comply with the

17

Court's direction. CBE makes two arguments in support of its position: (a) Pillsbury allegedly has violated the Court's Settlement Order and the Conversion Order, and (b) the law of restitution, supplemented by the Court's general equitable powers under Bankruptcy Code § 105(a), requires the return of the Deposit. The Court will address each argument, in turn.

(i)    *CBE's Reliance on the Court's Orders and the Liquidating Trust Agreement.*

CBE argues first that Pillsbury is required to return the funds by virtue of the express terms of the Trust. CBE argues that the Trust provides that Pillsbury is entitled to "reasonable attorney's fees," and this Court never determined the reasonableness of Pillsbury's fees. From this, CBE argues that Pillsbury violated the Settlement Order, which incorporated the terms of the Liquidating Trust Agreement, and that Pillsbury should be ordered to return the funds. There are three major difficulties with CBE's position. First, the Conversion Order expressly stated that the funds are not property of the estate. Case No. 12-30347-BFK, Dkt. No. 538, ¶ 8 ("To avoid any misunderstanding, all such causes of action, claims or defenses are not and shall not be deemed property of the estate (and shall be deemed contributed to the Trust upon entry of this Order and signing of the Trust Agreement by Pillsbury), but shall remain subject to the Court's jurisdiction pursuant to the Settlement Order and this Order.")[4] Pillsbury was not required to seek court approval of the reasonableness of its fees where the funds were

---

[4] This provision appears to have been a recognition that once the case was converted to Chapter 7, Pillsbury no longer could be compensated for post-conversion representation of the Debtor out of any assets of the estate. *Lamie v. U.S. Trustee*, 540 U.S. 526 (2004).

18

declared not to be property of the estate and Pillsbury was not seeking compensation from the bankruptcy estate.

Second, CBE is not a beneficiary of the Chesapeake Trust. The Liquidating Trust Agreement provides that there are no intended third party beneficiaries. *Id*., Liquidating Trust Agreement, ¶ 12 ("Nothing in this Trust Agreement is intended or shall be construed to confer upon or to give any Person other than the Beneficiaries, any rights or remedies under or by reason of this Trust Agreement.") Further, even if the Court were to determine that Pillsbury's fees were unreasonable, the funds would flow to the other beneficiaries of the Trust, Regions Bank and the unsecured creditors, not to CBE. CBE's counsel acknowledged this fact, at oral argument. ("THE COURT: . . . So, I mean, you're not even – you, being CBE – isn't even, arguably, in the waterfall, right? MR. BISS: "No, it – not even arguably.") Dec. 15, 2015 Hr'g Tr. at p. 15, Dkt. No. 237. CBE's real objection here is not to the reasonableness of Pillsbury's fees at all; rather, CBE's objection is one of timing. CBE claims that Pillsbury should have filed a fee application because doing so would have alerted CBE to Pillsbury's intention to pay its fees and would have provided CBE with the opportunity to object to the release of any of the funds while the case was on appeal. CBE lacks standing to challenge the reasonableness of Pillsbury's fees because it is not a beneficiary of the Liquidating Trust.

Third and most importantly, CBE is reading a term into the Liquidating Trust Agreement that does not exist. The Liquidating Trust Agreement states: "[u]pon the resolution of any disputes regarding right, title and interest to the Funds, the Trustee shall

19

immediately distribute the Funds in accordance with the paragraph 5 of the Settlement

Order." Dkt. No. 234, Liquidating Trust Agreement, p. 8, ¶ D. CBE would have this

provision read: "upon the resolution of any disputes *and any appeals therefrom*…." This

is not what the Liquidating Trust Agreement says, and to imply this additional term

would be a strained reading of the plain language involved ("resolution of any disputes").

Unquestionably, this Court's Findings of Fact and Conclusions of Law and the

accompanying Order of November 14, 2014, resolved the dispute, within the ordinary

meaning of the term. *See* Dkt. Nos. 202, 203.

For these reasons, the Court finds that Pillsbury did not violate the Settlement

Order, the Conversion Order or the terms of the Liquidating Trust in applying the funds

to its fees, once this Court issued its ruling. CBE's right to recover the funds must be

grounded, if at all, in the law of restitution, not in the Court's Orders or the Liquidating

Trust Agreement.

> (ii)    *Restatement (First) of Restitution § 74, Comment h and Illustration 20.*

CBE relies, alternatively, on the law of restitution, specifically, Restatement

(First) of Restitution § 74. Comment h to Section 74 of the Restatement (First) of

Restitution provides as follows:

> h. *Restitution from attorney or agent of judgment creditor.* An attorney or other agent of the judgment creditor who receives payment from the judgment debtor or who receives the proceeds of sale of the debtor's things and who pays it to the judgment creditor before reversal is not liable if the judgment was valid before reversal and if he had no knowledge of any fraud used in securing it. Under the same conditions he is under no duty to repay money which he received on account of the judgment creditor and

which he retains as payment for services or for a debt owed by the
judgment creditor to him (see Illustration 20) since he received the money
as a bona fide purchaser. On the other hand, the attorney of the judgment
creditor who conducted the proceedings is not entitled to retain property
which he purchased on execution sale under the judgment subsequently
reversed (see Illustration 21). For this purpose he is in the position of the
judgment creditor. If the judgment reversed was void (see § 73) and he
directed the sale of the debtor's property, or if he knew that the judgment
was obtained by fraud, he was a participant in a tort and cannot retain the
proceeds of a sale or escape liability for having dealt with the debtor's
things.

Restatement (First) of Restitution § 74 cmt. h, illus. 1 (1937).

Illustration 20 to Comment h also provides as follows:

A obtains a valid judgment against B for $3000. B pays the amount of the
judgment to C, A's attorney. At A's direction C expends $1000 to satisfy
A's creditors and retains $2000 as compensation for his services in this
suit and in previous ones. Upon reversal of the judgment, B is not entitled
to restitution from C.

Restatement (First) of Restitution § 74 cmt. h, illus. 20 (1937).

The Restatement (Third) of Restitution and Unjust Enrichment does not contain

the same language as Comment h, nor does it contain the same Illustration 20. The

Restatement (Third) does discuss attorneys who have taken their cases on a contingency

fee basis, as follows:

If funds received in satisfaction of a judgment are paid by the judgment
creditor to a bona fide payee (§ 67), the latter holds such payments free of
the judgment debtor's restitution claim on the subsequent reversal of the
judgment. See Illustration 15. A bona fide payee from the judgment
creditor might, of course, be a lawyer as well as a bank. Note, however,
that a lawyer who receives a share of a judgment *pursuant to a contingent-
fee arrangement* does not take the money as a bona fide payee,
notwithstanding that the lawyer takes the money in good faith. Between
lawyer and client, in such circumstances, the lawyer assumes the risk of
nonrecovery: this makes the lawyer, not the client's creditor, but an

> assignee pro tanto of the client's judgment. Vis-à-vis the judgment debtor,
> therefore, the lawyer stands in the position of the judgment creditor. See
> Illustration 16.

Restatement (Third) of Restitution and Unjust Enrichment, § 18, cmt g (2011) (emphasis

added).

Illustration 16 to § 18 contains an example of an attorney with a case on a

contingent fee basis, as follows:

> Same facts as Illustration 15, except that another $50,000 of A's judgment
> is paid to A's Lawyer, pursuant to a contingent-fee arrangement between
> A and Lawyer. Although Lawyer received payment without notice of A's
> fraud, B is entitled to restitution from Lawyer of $50,000, with interest
> from the date Lawyer obtained notice of the fraud.[5]

Restatement (Third) of Restitution and Unjust Enrichment, § 18, cmt g, illus. 16 (2011).

Pillsbury argues that it occupies the position of C, the attorney in Illustration 20

from the Restatement (First). CBE argues that it would be inequitable for Pillsbury to

retain the funds. Although the timing of Pillsbury's offset of the funds versus the filing of

CBE's Notice of Appeal is not entirely clear because the Potter Affidavit does not use a

precise date for the setoff, it certainly came as no surprise to Pillsbury when CBE noted

its appeal. CBE argues that, but for Pillsbury's setoff of the funds, the Chesapeake Trust

would be in a position to pay the judgment. Pillsbury argues, on the other hand, that CBE

could have moved for a stay pending appeal and did not, a version of "equity aids the

vigilant."

---

[5] It should be noted here that Pillsbury was engaged on an hourly basis, not a contingent fee basis in the
underlying Potomac Supply bankruptcy case.

The cases applying Restatement (First) of Restitution § 74 have not been entirely consistent. In *Pendergast v. Muns*, funds were paid by the clerk of court to the plaintiff's law firm, which then disbursed the funds to its client. The client paid legal fees that were due to the law firm. The South Dakota Supreme Court, while recognizing the basic restitutionary principle ("upon the reversal of a judgment, the law raises an obligation on the part of the party who received benefits from its enforcement to restore those benefits to the adverse party"), ruled that the law firm need not return the funds. 238 N.W. 344, 347 (1931). The Court held: "The law is clear that a party who has received money in behalf of the judgment creditor, for instance, as agent or attorney of the judgment creditor, cannot be compelled, after reversal of the judgment to restore the same, unless it be shown that such party still retains it." *Id*., at 348.

The Court of Appeals of New York, reached the same result in a per curiam opinion, in *Lowenstein v. Reikes*, 180 N.E. 113 (1932) ("The remedy of restitution is not available against [the judgment creditor's] transferees and creditors to nullify [the judgment creditor's] use of it.") The courts of neighboring New Jersey, on the other hand, have been more amenable to the remedy of restitution as against attorneys. *See Bruns v. Mattocks*, 70 A.2d 780 (1950) (requiring restitution of counsel's fee of $750); *Bernoskei v. Zarinski*, 927 A.2d 149, 154 (2007) ("in *Bruns*, we permitted direct recovery by judgment against the attorney, without resort to a constructive trust, where the attorney received fees and taxed costs pursuant to a court order.")

23

The case of *Berger v. Dixon & Snow, P.C.*, 868 P.2d 1149 (Colo. App. 1993),

involved an allegedly excessive contingent fee received by the attorneys after a motion to

enforce a settlement had been filed and was pending. The case is quite fact-specific, but it

does stand for the general principle that "an attorney who accepts fees with the

knowledge that the award on which those fees depend could be later reversed, vacated,

modified, or otherwise set aside, may be ordered to restore the fees." 868 P.2d at 1154.

The one bankruptcy court to have addressed the issue was the U.S. Bankruptcy

Court for the Southern District of Florida, in the case of *In re Williams*, No. 96-35228-

BKC-PGH, 97-0610-BKC-PGH-A, 1998 WL 34072045, at *1 (Bankr. S.D. Fla. Oct. 20,

1998). In *Williams*, the court quoted Am.Jur., as follows:

> The general rule is that even though the attorney retains as payment for his
> services, or for some other debt owing by his client, under an agreement
> with the latter, part or all of the proceeds of a judgment recovered by the
> client which is subsequently reversed, he is not obligated to make
> restitution to the judgment debtor provided he acted in good faith in
> prosecuting the action in which the judgment was recovered. But if the
> judgment was void, or if the attorney knew it was obtained by fraud or he
> otherwise did not act in good faith in retaining the money, he is liable to
> make restitution.

*Id.*, at *2 (quoting 5 Am.Jur., *Attorneys at Law*, Section 147).

Despite the general rule that treats attorneys as third party creditors, the court in

*Williams* ordered the return of previously garnished funds from the law firm because: (a)

the underlying judgment was a default judgment; (b) the Plaintiff's cause of action "was

weak on both the facts and the law;" and (c) the law firm "was obviously aware of the

likelihood of reversal" when it garnished the funds. *Id.*, at *4.

24

The Supreme Court of Kansas addressed the issue in *Excel Corp. v. Jimenez*, 7 P.3d 1118 (Kan. 2000). The *Excel* case, like the *Berger* case from Colorado, involved a contingent fee arrangement. The *Excel* case also involved a fraudulent judgment, though the attorney involved was deemed to be innocent of the wrongdoing. *Id*. The Supreme Court of Kansas, relying on *Berger*, held that "Comment h is not applicable in a contingent fee case because the attorney receiving a contingent fee is more like a real party in interest than a bona fide purchaser or a judgment creditor." 7 P.3d at 1126. Moreover, the Court held, the attorney's status as an officer of the court "places him on a different legal footing," and the Court could not approve the retention of the fee where the client was guilty of fraudulent conduct in procuring the judgment. One Justice dissented, noting: "Kansas lawyers, beware of the contingent fee contract. The fee you honestly earned in obtaining a judgment for your client is not final but subject to reimbursement in a separate court-created action until the statute of limitations for the possible fraudulent acts of your client has expired." 7 P.3d at 1132 (Lockett, J., concurring and dissenting).

The Massachusetts Court of Appeals held in *Cox v. Cox*, that the attorney is not liable in restitution to the judgment debtor "unless the judgment debtor, on remand, proves either that the payment did not discharge an unconditional, bona fide obligation the client had to the attorney or that, although the payment did discharge such an obligation, other circumstances exist that make the attorney's retention of the payment unjust." 780 N.E.2d 951, 962 (Mass. Ct. App. 2002). The Court held:

> we think it is sensible to sort third parties, as the Restatement § 74 does,
> into two categories: bona fide creditors of the judgment creditor (not liable
> in restitution) and real parties in interest (liable in restitution). We also
> think it sensible, when the third party is an attorney, that the nature of the
> fee arrangement should be a chief consideration in determining the
> category into which the third party falls.

*Id. See also Mohamed v. Kerr,* 91 F.3d 1124, 1127 (8th Cir. 1996) (attorney with

contingent fee arrangement "is analogous to that of a real party in interest, and he is

similarly under a duty to restore the amount received by him. *See* Restatement § 74 cmt.

k.")

The case of *Pond v. McNellis*, 845 N.E.2d 1043 (Ind. Ct. App. 2006), involved a

complicated procedural history, but it is sufficient to say that it was a divorce case where

the trial court declined to give effect to a fee-shifting provision of a property settlement

agreement. This decision was later reversed on appeal. While the case was on appeal, the

parties agreed to sell their marital residence. *Id.*, at 1047. The husband, Mr. Pond, filed an

emergency motion to escrow the proceeds of the sale, but this motion was denied and

$69,000 was paid out of the sales proceeds to the wife's attorneys. *Id.*, at 1048. Mr. Pond

renewed his motion for a stay in the Court of Appeals, but this too was denied. *Id.* The

Court of Appeals reversed the trial court's decision on the property settlement agreement

and the case was remanded to the trial court, where the husband sought reimbursement of

the $69,000 paid to his ex-wife's attorneys out of the sales proceeds. *Id.*, at 1053. The

trial court granted summary judgment to the ex-wife's attorneys, and Mr. Pond appealed.

*Id.* The Indiana Court of Appeals reversed, holding that the attorneys could not be bona

fide purchasers in the face of the appeal and the motions for a stay pending appeal in the

trial court and in the Court of Appeals. *Id.,* at 1058-59.

The Supreme Court of Washington considered the issue in *Ehsani v. McCullough

Family P'ship*, 159 P.3d 407 (Wash 2007) (en banc). *Ehsani* involved a judicial

foreclosure action. The trial court ordered that the mortgagee's attorney's fees be paid out

of the proceeds of sale. *Id.*, at 408. The order of sale was reversed and remanded. *Id*. On

remand, the mortgagor sought reimbursement of the fees paid. *Id*. The trial court denied

the mortgagor's motion, but the Court of Appeals reversed. *Id*. The Supreme Court of

Washington reversed the Court of Appeals, relying on Comment h and Illustration 20 to

Restatement (First) Restitution § 74. The Court held, citing *Cox v. Cox*, that there is no

unjust enrichment "where a party receives only that to which he is entitled under the

terms of a valid, preexisting agreement with the judgment creditor." *Id*., at 411 (citing

*Cox*, 780 N.E.2d at 962). The Court also noted that: (a) a decision in favor of the

judgment debtor requiring restitution from the judgment creditor's attorney would place

the creditor's attorney in a conflict position with his or her own client because the client

would demand an immediate release of the funds in the attorney's trust account, while the

attorney would be concerned with liability to the judgment debtor, if the case is reversed

on appeal; and (b) a holding in favor of the judgment debtor would render the

requirement of a supersedeas bond meaningless – appellants would have no incentive to

post a supersedeas bond, if they thought that they could collect against their adversaries'

attorneys in the event of a reversal on appeal. *Id*., at 414.

Finally, the U.S. District Court for the District of Utah denied a motion to compel attorneys to refund monies paid to them for the criminal defense of a corporate officer where the funds were advanced pursuant to a preliminary injunction compelling indemnification of the officer which was later reversed on appeal. *Flood v. ClearOne Commc'n, Inc*., No. 2:08-CV-00631-CW, 2012 WL 192709, at *1, *2-*3 (D. Utah Jan. 23, 2012). In *Flood*, the court was concerned that enforcing a restitution obligation against the attorneys would, in effect, transform the representation of the client into a contingent fee arrangement in a criminal case, which is prohibited by the rules of ethics. *Id*., at *8. Further, the court described the *Pond* and *Berger* cases as representing "a minority position." *Id*., at * 9.[6]

Assuming for the moment that Pillsbury is not the "real party in interest," and was acting solely in its capacity as the Trust's attorneys (a question addressed in Part (iii), below), the Court is left with the situation where: (a) Comment h to the Restatement (First) of Restitution § 74 indicates that an order compelling the return of the Deposit to CBE would be inappropriate; (b) the case law interpreting the restitutionary principle embodied in Restatement (First) of Restitution § 74, surveyed above, has been inconsistent, with most of the cases ordering restitution involving either contingent fee arrangements as in *Berger* and *Exel* (which, according to the District Court in *Flood*,

---

[6] At the oral argument on this Motion, counsel for CBE relied on the case of *Ure v. Ure*, 79 N.E. 153 (Ill. 1906). The *Ure* case did not involve an order of restitution against attorneys at all. Rather, *Ure* recognized the basic distinction between parties to the litigation, whose rights are dependent upon the outcome of an appeal, and third party, bona fide transferees, whose rights are not. The *Ure* case is entirely consistent with Restatement (First) Restitution § 74, but is not helpful in the current context.

represent the minority view), or cases where the judgment debtor moved for a stay

pending appeal as in *Pond* (which CBE did not); (c) Comment g to § 18 of the Third

Restatement suggests that the remedy of restitution where a judgment has been reversed

is limited as against attorneys who had the case on a contingent fee basis (the *Cox* case

echoes this concern, describing the contingent nature of the fee arrangement as being the

"chief consideration"); and (d) no case, to the Court's knowledge, from the Fourth

Circuit, the District Court for this District or the Supreme Court of Virginia has imposed

an obligation of restitution on a law firm where the firm merely received payment of its

fees from the client. While there was certainly a cognizable risk that this Court's

judgment could have been reversed on appeal, the Court cannot conclude (as the

Bankruptcy Court in *Williams* concluded) that Pillsbury knew that there was a *likelihood*

of a reversal on appeal at the time it set off the funds. *In re Williams*, 1998 WL 34072045

at *4. Further, CBE could have moved for a stay pending appeal and it failed to do so,

unlike the judgment debtor in *Pond*. The Court is willing to assume, as argued by CBE,

that Pillsbury had actual notice of CBE's Notice of Appeal at the time that Pillsbury set

off the funds. A Notice of Appeal, however, is not the same thing as a memorandum of

lien or a notice of *lis pendens.* In other words, Pillsbury may have had notice of CBE's

legal *claim* to the funds, but that is different from concluding that CBE had an equitable

*right* to the funds at the time that the case was on appeal. CBE had no legal right to the

funds until the District Court entered its judgment reversing this Court's judgment.

For these reasons, the Court concludes that equity does not demand that Pillsbury

return the funds, *unless* Pillsbury is the real party in interest with respect to the funds.

(iii)    *Restatement (First) of Restitution § 74, Comment k.*

While the Court finds that Pillsbury as counsel for the Trust is not liable in

restitution to CBE, this does not end the inquiry. The question then becomes: is Pillsbury

the "real party in interest" with respect to the funds? The Court concludes that it is.

Comment k to Restatement (First) of Restitution § 74 states as follows:

> *Restitution against other parties.* After the reversal of a judgment any
> person who, although not a party to the action, was a real party in interest
> and who received payment in whole or in part as the beneficial owner or
> as one of several owners, is under a duty to restore the amount received by
> him.

Restatement (First) of Restitution § 74 cmt. k (1937).

Comment k provides two Illustrations:

> 27. A obtains a judgment against B for $2000. B pays the $2000 to A who
> pays it to C, for whom A is trustee with respect to the subject matter of the
> action. Upon reversal of the judgment, B is entitled to restitution from C.

> 28. A, an administrator, obtains a judgment against B for $3000. B pays A
> the amount of the judgment which A distributes among the next of kin of
> the deceased. The judgment is reversed. B is entitled to restitution of the
> amount received by each of the next of kin.

Restatement (First) of Restitution § 74 cmt. k, illus. 27, 28 (1937).

Comment k is a straightforward application of the general restitutionary principle

contained in Section 74 where a judgment is reversed on appeal. The Court finds that

Pillsbury is the real party in interest in this case. Pillsbury was the primary beneficiary of

the Chesapeake Trust. It was entitled to payment of all of its fees in this litigation and to

30

payment of its fees in the underlying Potomac Supply bankruptcy case up to the amount of $240,000.00. Dkt. No. 234, Settlement Order, ¶ 5(a) and (b). After payment of its fees in full in this litigation and the payment of up to $240,000.00 of its fees for the Potomac Supply case, Pillsbury was entitled to payment of one-third of the remaining amount of the Deposit, if any, along with the other beneficiaries of the Trust. *Id*., ¶ 5(c). In recognition of the primacy of Pillsbury's rights in the Deposit, the Liquidating Trust provided: "[a]ll decisions regarding the Funds Rights (including but not limited to the pursuit and continuation or settlement of any litigation) shall be made solely by Pillsbury, as Trustee." *Id*., Liquidating Trust Agreement, ¶ 7.

Under the circumstances, the Court can only conclude that Pillsbury is the real party in interest with respect to the Deposit. Pillsbury's position is indistinguishable from C, the beneficiary in Illustration 27, above. In fact, the case is even stronger against Pillsbury - Pillsbury occupied the position not just of the primary beneficiary (the only beneficiary, as it turns out) but that of Trustee and sole decision-maker as well. Thus, even though the Court would not order a return of the Deposit from Pillsbury if Pillsbury simply occupied the position of counsel for the Trust, the Court concludes that Pillsbury is the real party in interest for purposes hereof, and, therefore, will order a return of the deposit. The Court will also order Pillsbury to pay interest on the Deposit at the rate of 6% per annum from the date of the Court's Order of November 14, 2014, as Pillsbury has had the use of the funds since that date.

For the foregoing reasons, the Court will order Pillsbury to pay the Deposit in the amount of $500,000.00 plus interest at the rate of 6% per annum from November 14, 2014, until paid, to CBE within 14 days of the entry of the Order accompanying this Opinion, on the terms and conditions set forth below.

## Conclusion

For the foregoing reasons, the Court will enter a separate Order providing as follows:

A.  The Court will enter a money judgment in favor of CBE and against the Chesapeake Trust in the amount of $500,000.00, plus pre-judgment interest at the rate of 6 % per annum from November 6, 2012, and $3,716.99 in costs, with interest to run from the date of judgment at the rate provided in 28 U.S.C. § 1961;

B.  The Court will deny CBE's Motion for an award of attorney's fees;

C.  The Court will deny CBE's Motion to compel a turnover of the Deposit as against the Chesapeake Trust;

D.  The Court will grant CBE's Motion to compel a turnover of the Deposit as against Pillsbury.

E.  To avoid any interference with the pending appeal, Pillsbury will be ordered to return the sum of $500,000.00 plus interest at the rate of 6% per annum from November 14, 2014, until paid, to its trust account within 14 days of the entry of the Order, and shall so certify to the Court within the said 14 days. Pillsbury can move for a stay pending its appeal within 28 days of the entry of the Order accompanying this

32

Memorandum Opinion. In the event that Pillsbury timely files a motion for a stay

pending appeal, the Court will rule on such motion in the ordinary course. If Pillsbury

fails to move for a stay pending appeal within the said 28 days, then the Court will order

the release of the funds to CBE.

     F.  The Clerk will mail copies of this Memorandum Opinion and the

accompanying Order to the parties below, or will provide counsel with cm-ecf notice of

their entry.


Date: <u>Feb 18 2016</u>         <u>/s/ Brian F. Kenney</u>

Alexandria, Virginia         Brian F. Kenney
United States Bankruptcy Judge

     Entered on Docket: Feb 18 2016

Copies to:

Jerry Lane Hall, Esquire
Patrick J. Potter, Esquire
Pillsbury Winthrop Shaw Pittman LLP
2300 N Street N.W.
Washington, DC 20037-1128
*Counsel for Plaintiff*

Steven S. Biss, Esquire
Law Office of Steven S. Biss
300 West Main Street
Suite 102
Charlottesville, VA 22903
*Counsel for Defendant*

Regions Bank
Kepley, Broscious & Biggs, PC
2211 Pump Road
Richmond, VA 23233
*Third-Party Defendant*

William A. Broscious, Esquire
Kepley Broscious & Biggs, PLC
2211 Pump Road
Richmond, VA 23233
*Counsel for Third-Party Defendants*

Jonathan W. Jordan, Esquire
King & Spalding
1180 Peachtree Street
Atlanta, GA 30309
*Counsel for Third-Party Defendants*

Jack McKay, Esquire
Pillsbury Winthrop Shaw Pittman LLP
2300 N Street, N.W.
Washington, DC 20037
*Counsel for Third-Party Defendant*